**In the Matter of WPAS, INC., Debtor.**

**Bankruptcy No. 80–933 C.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Aug. 5, 1980.

See also, 6 B.R. 44.

Guillermo Ruiz, St. Petersburg, Fla., for debtor.

Domenic L. Massari, III, Tampa, Fla., for Wister.

Harley E. Riedel, Tampa, Fla., for Ayers.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Bankruptcy Judge.

THIS IS a business reorganization case commenced by a voluntary petition filed by WPAS, Inc. (the Debtor) on July 1, 1980. On the same date, the Debtor filed an application and sought permission to continue to operate its business and on July 7, 1980, this Court entered an order, ex parte, and authorized the Debtor to continue to operate its business. The record reveals that on July 10, 1980, Charles F. Wister (Wister) filed an application and sought an order authorizing the custodian to continue and remain in possession and control of the Debtor's properties. On July 10, 1980, David Lee Ayers, Jr., the custodian in possession, filed an application and sought an order from this Court preserving the status quo pending a hearing. On July 14, 1980 this Court entered an order nunc pro tunc

which provided that the status quo shall be preserved until this Court has an opportunity to consider the following: (1) The application filed by Wister and (2) The Application filed in the interim by the Debtor, who sought an order directing the custodian to turn over the properties of the estate pursuant to § 543 of the Bankruptcy Code.

Thus, the ultimate question presented by these Applications for the immediate consideration of this Court can be simply stated as follows: Should this Court preserve the continuity and the status quo and permit the State Court receiver to retain the possession and control of the properties of the Debtor or should this Court invoke the authority granted by § 543(a) of the Bankruptcy Code and oust the State Court receiver and reinstate the Debtor to possession and control of its properties.

The facts germane to the controversy, as developed at the emergency status hearing, can be summarized as follows:

WPAS is a radio station duly licensed with the Federal Communication Commission and is located in Zephyrhills, Florida. Prior to August of 1979, the station was owned by Wister, although it is not clear from the record whether such ownership was individual or through a corporate entity. Be that as it may, Wister commenced the negotiations with Mr. Lincoln Mayo, which ultimately culminated in a sale of all of the WPAS station facilities owned by Wister, or by his corporation, to an entity known as Mayo Communications, Inc. (MCI). The transaction was closed at the end of August of 1979 and Mayo Communications began to operate the station in September through a wholly owned subsidiary WPAS, Inc., the Debtor involved in these proceedings. The sale of the facilities was on credit terms. The unpaid portion of the purchase price was evidenced by two promissory notes, both of which represented an obligation of MCI only and not an obligation of the Debtor, although as part of the transaction Mayo Communications pledged all the assets of the Debtor to secure the repayment of the balance remaining unpaid on the purchase price. The agreement

called for monthly payments slightly in excess of $2,000 and the record is clear that such payments were in fact made to Wister for five months. The record further reveals that Mayo, shortly after acquiring control of the radio station, encountered a serious cash flow problem. Between January 1980 and April 1980, the Debtor had a serious overdraft problem due to 51 checks Mayo issued which were drawn on bank accounts having insufficient funds. According to the bookkeeper's testimony, the overdrafts were due to the fact that Mayo had drawn checks in anticipation of collecting his accounts receivable and not after the collections were actually made.

The record further reveals that during the period that Mayo controlled the radio station operation, the Debtor made no FICA deposits with the federal government and as a result, incurred a payroll tax liability in excess of $17,000. During the pertinent period, Mr. Mayo, the principal, and Mr. and Mrs. Walker, stockholders in MCI, were placed on the payroll of the Debtor. In addition, Mr. Mayo incurred substantial expenses by purchasing new furniture, new carpeting and paying commissions to salesmen on sales rather than on collections. While it is true that the gross sales for January through March 1980 were somewhat greater than the corresponding months of the previous year, when the station was operated by Wister, so were the expenses. In addition, there is no doubt that the station was continually operated during the relevant period by Mr. Mayo at a substantial loss.

When MCI defaulted on its obligations on the purchase money obligation, Mr. Wister filed an action to foreclose the mortgage and to enforce the security interest against the properties owned by the Debtor. In connection with this foreclosure action, Wister applied for and obtained the appointment of David L. Ayers, Jr. as receiver who promptly after this appointment applied for and obtained a transfer of the station's broadcasting license from the FCC.

Mr. Ayers is still in possession and control of the assets of the Debtor and operates the radio station as receiver. Prior to his appointment, Mr. Ayers was employed by the same station for more than six years, but his involvement in selling air time was sporadic and minimal. However, after he was appointed his duties changed radically and the record indicates that he now devotes the major portion of his time to selling air time together with Mr. Wister who volunteered to assist the station without compensation after Mr. Ayers took control of the station. Presently half of the total monthly sales are attributable to the efforts of Mr. Wister, the other half to Mr. Ayres. Thus, there is no question that in the event this Court ousts the State Court receiver, Mr. Wister will depart immediately which, in turn, would require the Debtor to engage a salesperson to replace him since it is clear that Mr. Ayers would not be able to take care of the sales by himself. It further appears that to train a new salesperson in this field would take at least two months and would require a minimum salary of $150 per week plus a 15% commission on collections.

During the period of Mr. Mayo's control, the station's financial difficulty became widely known in the small community of Zephyrhills. The imposition of a receivership created some adverse publicity and there is evidence in the record that the financial problems encountered by the Debtor during the aegis of Mr. Mayo, was less than conducive to preserving the good will and the good reputation previously enjoyed by the station. The receivership now currently operates on a positive cash flow although it is anticipated that a cash flow shortage will exist in August due to the fact there will be three payrolls as opposed to the usual two payrolls.

The Application of the Debtor is based on § 543(b) of the Bankruptcy Code which in pertinent part provides as follows:

*Turnover of Property by a Custodian*
(b) A custodian shall—
(1) deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian's possession, custody or control on the date that such custodian

acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds of such property that, at any time, came into the possession, custody or control of such custodian.

In opposing the Debtor's application and in support of its own application, Wister relies on sub–clause (d) of the same section, which provides as follows:

(d) The bankruptcy court may, after notice and hearing, excuse compliance with subsection (a), (b) or (c) of this section, if the interests of creditors, and if the debtor is not insolvent, of equity security holders, would be better served by permitting a custodian to continue in possession, custody or control of such property.

Section 543(b) is basically a readaptation of a long standing policy of the Bankruptcy Act and is derived from § 2(a)(21), § 69(d), § 257 of Chapter X and § 507 of Chapter XII, and also Bankruptcy Rule 604. Thus, there is no doubt that upon the intervention of the bankruptcy proceeding, a non–bankruptcy custodian receivership shall terminate and the custodian appointed by a non–bankruptcy court must, as a general proposition, deliver the property to the trustee, or, in the case of a relief chapter proceeding, to the Debtor, and must account for the properties which came into his possession, custody or control as a custodian. To mollify the seemingly harsh and apparently inflexible requirement of § 543b, Congress provided in § 543d for dispensation of the apparent mandatory requirement of turnover provisions of the Section under certain circumstances. Accordingly, the Court may dispense with the enforcement of the mandate to oust a non–bankruptcy custodian from possession and control of the properties of the Debtor and may authorize the custodianship to proceed, after notice and hearing, if the interest of *creditors* (emphasis supplied) would be better served. This Section is merely a recognition of a long–recognized doctrine of abstention now expressly codified by Congress in § 305 of the Bankruptcy Code which permits the court to decline to entertain any controversy which otherwise would be within its judicial competence if to do so would be in the best interest of all parties concerned, although not necessarily the interest of the debtor.

Before considering the merits of the controversy, it should be pointed out that it developed at the outset that Wister was not a creditor of the Debtor within the meaning of the term as defined by § 101(9), in that, he did not hold a claim against the Debtor but only against MCI. To cure this defect and establish standing, counsel for Wister moved for leave to permit an employee of the radio station, who is obviously a creditor, to intervene in the proceeding. Whether such intervention at this time would be proper, is without any significance, because to deny Wister the chance to protect his interest merely because he is not technically a creditor of this Debtor would obviously be a miscarriage of justice. There is no doubt that Wister has a cognizable interest in all assets of the Debtor by virtue of the mortgage and the security interest granted to him in connection with the sale of the radio station by MCI. Whether his mortgage and his security interest is valid and enforceable against the properties of the Debtor is not a question before this Court at this time. Be that as it may, there is no question that Wister has a legitimate interest to protect and thus, has standing to oppose the application of the Debtor. This leaves for consideration the ultimate question whether Wister or the intervening creditor established with requisite degree of proof that the interests of creditors would be better served by maintaining the receivership so that this Court may invoke the escape clause set forth in sub–clause (d) of § 543.

■ Having considered the record, this Court is satisfied that abstention in this instance would be proper and the custodian should be permitted to remain in the possession, custody and control of the properties of the Debtor subject to his obligation to file an accounting of any property of the Debtor as required by § 543(b)(2) and such custodianship shall continue until further order of this Court.

**44**

This conclusion is based on the undisputed facts established by the record which show that the affairs of the Debtor were clearly mismanaged after MCI acquired the facilities. This mismanagement is indicated by the Debtor's total disregard of the requirements of the Internal Revenue Code of the United States and by the cavalier manner in which Mr. Mayo handled the Debtor's financial affairs. First, any person who undertakes to operate a business having a payroll must be aware of his obligation to file payroll tax returns and pay the FICA taxes. It is equally true that a person who operates a business has no business drawing checks on accounts without ascertaining whether there are sufficient funds on deposit. Moreover, the evidence is clear that if a Debtor is permitted to obtain possession, the Debtor will suffer additional losses because it will have to replace Mr. Wister, who has volunteered his services, with a paid employee who will have to spend considerable time before he can be a productive salesperson.

For the reasons stated, this Court is satisfied that the non–bankruptcy custodianship shall not be disturbed at this time and the State Court receiver, Mr. David Lee Ayers, Jr., shall remain in possession and control the assets of the Debtor subject to the control and supervisory powers of this Court.

A separate Order has been entered in accordance with the foregoing.