**In re KCC–FUND V, LTD., Debtor.**

**Bankruptcy No. 88–04985–2–11.**

United States Bankruptcy Court,
W.D. Missouri.

Feb. 13, 1989.

Emery C. Shannon, Dallas, Tex., for debtor.

Michael Hufft, Kansas City, Mo., for Overland Park Sav. and Loan.

Michael R. Roser, Kansas City, Mo., for Centerre Bank.

Cindy Edwards, Kansas City, Mo., Asst. U.S. Trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Debtor filed a Motion To Compel Receiver To Turn Over Property Of The Estate and one of the secured creditors has filed a Motion For Order Excusing Compliance With Subsections (a) and (b) of Section 543 (11 U.S.C. § 543). These motions are in direct contravention to each other and were, therefore, heard together. Some historical background is essential to explain the posture of the proceeding.

Debtor owns and operates three apartment complexes in Warrensburg, Missouri. Warrensburg is a county seat town in which Central Missouri State University is located, same being the fifth largest state college. Two of the apartment projects cater to the college students, meaning that they have a somewhat volatile population, while one caters to the general public, and is more stable as to occupancy level. On or about August 3, 1988, Overland Park Savings & Loan Association (hereinafter OPSL) obtained an ex parte order from the Circuit Court of Johnson County, Missouri, for the appointment of Carroll Leffler as receiver for the three apartment complexes. Debtor countered with the filing of a Chapter 11 voluntary petition in the Northern District of Texas on August 10, 1988. OPSL filed the aforesaid Motion to excuse compliance on August 16, 1988. The Northern District of Texas Bankruptcy Court transferred the entire proceeding to the Western District of Missouri and debtor filed its Motion To Compel on December 12, 1988. This Court held hearings for some six hours on January 11, 1989, and briefs have been filed by the debtor, OPSL and the U.S. Trustee.

Some procedural underbrush needs to be eliminated before the two main issues can be addressed. Debtor objects to OPSL's Motion, claiming that OPSL has failed to prosecute same with requisite vigor. The Court has been unable to discern from the record any lack of requisite vigor on the part of OPSL. It is the function of a party in interest to file pleadings to sustain, support or enhance its position. It then becomes the function of the Court to hear those pleadings. Absent dilatory requests for continuance or delay, any fault found in time delay must be laid to the door of the Court, not the movant. The record reveals no such action (or inaction) on the part of OPSL. Conversely, OPSL takes the position and has advanced the theory that debtor's Motion is untenable and should be brought as an adversary action. Normally, this might well be correct. *In re Riding*, 44 B.R. 846, 847 (Bankr.D. Utah 1984). Collier's treatise indicates that Rule 7001(1) may exclude § 543 actions, but states that such exclusion is not clear. 8 Collier on Bankruptcy § 6002.5 (15th Ed.). Read in conjunction with Rule 6002, it is the conclusion of this Court that an action to require a custodian required by the Code to deliver property in the custodian's possession or control to the trustee may properly be brought by motion and may be brought either by motion or by adversary action. As long as it is clear that the party involved is nothing more than a custodian and possesses no independent claim to the

assets sought, holding such assets only pursuant to statutory or court authority, either procedure should be appropriate.

Moving on then to the main issues, the real question present is who should be in charge of the funds and hopefully protect the array of interests present in this case until some definitive solution of the entire proceeding is reached. For an answer, the ultimate source is application of 11 U.S.C. § 543 against the evidence presented at the hearing. Of necessity, this must be on a case by case analysis and no generic rule can be proclaimed. 11 U.S.C. § 543 provides:

(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property that, at any time, came into the possession, custody, or control of such custodian.

(c) The court, after notice and a hearing, shall—

(1) protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;

(2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; and

(3) surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title.

(d) After notice and hearing, the bankruptcy court—

(1) may excuse compliance with subsection (a), (b), or (c) of this section, if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and

(2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

■ The Court interprets the interlocking subsections (a), (b), (c) & (d) of 11 U.S.C. § 543 to require the Court to determine whether continuation of the prefiling posture of the case (with a receiver or similar party in charge of the funds generated by property of the estate) should continue in the custodian position or whether turning over said assets to the debtor in possession better serves the interests of creditors and, if debtor is solvent, the interests of equity security holders. Since there was no evidence before the Court as to solvency at the time of the hearing, that aspect of the equation loses at least some cogency.

■ It seems to the Court that generally the basic equities would favor a debtor or debtor in possession. If nothing more, a substantial weight is added to the debtor's burden of attempting to reorganize and to promulgate an acceptable plan of reorgani-

zation if debtor cannot have access to all of its assets during its initial breathing spell. Debtors in possession generally have under Chapter 11 some four months or so before the creditors transit from sullen to mutinous, even though there is nothing in the Code that specifically deifies such a period of time. Thus a mere showing that the creditors will feel more comfortable with certain assets (such as cash or its equivalent) controlled by a third party rather than the debtor is not sufficient. Creditors are usually not comfortable with the debtor in charge of any assets. In the mindset of each creditor, there is little question but what each debtor in bankruptcy suffers manifest defects in character, or they would not be in bankruptcy. Also the material in Colliers and the legislative history emphasize that section 543(d) was designed to reinforce the abstention policy of 11 U.S.C. § 305 by permitting the bankruptcy court to authorize custodianship to proceed notwithstanding sections 543(a), (b) and (c), even though there is nothing in either source that requires abstention as a prerequisite for excuse of compliance. (Collier on Bankruptcy, 15th Edition, ¶ 543.01 and H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 370 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 84–85 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. The decided cases tend to expand the scope of the bankruptcy court's likelihood of excusing compliance. The Court has been able to find only three cases that appear in point. Since counsel for the debtor in possession, movant and the U.S. Trustee jointly produced only one case, *Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542, 7th Cir. (1985), it may be that there is no extensive body of law outlining any parameters. The Court does not find *Cash Currency* persuasive because: (1) there was a bankruptcy trustee, and (2) the Section 543(d) question was not the key issue in that case. Instead the Court finds the cases of *In the Matter of WPAS, Inc.*, 6 B.R. 40, Bkrtcy. M.D.Fla.1980, *In re CCN Realty Corp.*, 19 B.R. 526, Bkrtcy.S.D.N.Y.1982, and *In re Powers Aero Marine Services, Inc.*, 42 B.R. 540, Bkrtcy.S.D.Tex.1984, to be more in point as to the extent of the Court's field

of inquiry and consideration in determining how to apply § 543(d). The Court concludes that it may properly inquire into the debtors' prepetition and postpetition conduct in determining whether it should excuse compliance under § 543(d) and that said subsection is not inextricably liked to § 305 and only usable in conjunction therewith.

■ The evidence at the hearing showed that maintenance of the three complexes had been sadly neglected. There were rotted through places in the soffits and eaves that can and will cause serious damage. Concrete and brick work has been neglected until hazardous conditions exist. The receiver has obtained a 100% occupancy. The debtor never did. The debtor engaged in contracts with related entities that appeared to be detrimental to the debtor. The debtor has been uncooperative with the United States Trustee. The debtor's participation in two § 341 meetings has been far from cooperative or appropriate. The receiver has been willing to cooperate with the debtor but was never asked for figures or information other than by formal pleadings. The receiver appears to have done an outstanding job. The United States Trustee as well as Centerre Bank have joined orally in requesting excuse from compliance.

All of these factors enter into the Court's decision to grant the Motion of Overland Park Savings and Loan and deny the Motion of the debtor in possession. The Court will excuse compliance until it sees if debtor in possession can achieve a confirmed plan. The receiver shall continue in his present position until further Order of the Court.

The Court, therefore, grants the Motion of OPSL To Excuse Compliance for the present and until determination as to whether debtor in possession can obtain confirmation of a reorganization plan. The Court denies the Motion of Debtor In Possession To Compel Turnover.

The foregoing Memorandum Opinion shall constitute Findings of Fact and Con-

clusions of Law as required by Rule 7052, Rules of Bankruptcy.

SO ORDERED.