**In re POPLAR SPRINGS APARTMENTS OF ATLANTA, LTD., Poplar Springs Apartments of Atlanta II, Ltd., Debtors.**

**Bankruptcy Nos. 2–89–01863, 2–89–01865.**

United States Bankruptcy Court, S.D. Ohio, E.D.

June 13, 1989.

Robert J. Sidman, Vorys, Sater, Seymour and Pease, Columbus, Ohio, for various creditors.

Myron N. Terlecky, Strip, Fargo, Schulman & Hoppers Co., L.P.A., Stephenie M. Vesper, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio, for debtor.

David G. Heiman, Robert M. Duncan, Jones, Day, Reavis & Pogue, Columbus, Ohio, for Cardinal Industries, Inc. and Cardinal Industries of Florida, Inc.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

OPINION AND ORDER ON MOTIONS TO EXCUSE STATE COURT RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court after a consolidated trial of two motions seeking to excuse a state court appointed receiver from complying with § 543 of the Bankruptcy Code. The motions were filed by Great Western Bank ("Great Western"), a creditor holding mortgages, security interests in personalty and rents and assignments of rents against two phases of an apartment project which are the primary assets of Poplar Springs Apartments of Atlanta, Ltd. ("Poplar I") and Poplar Springs Apartments of Atlanta II, Ltd. ("Poplar II"). The motions were opposed on behalf of the debtors and Cardinal Industries, Inc. ("Cardinal"), the general partner of each debtor. Cardinal is also a Chapter 11 debtor before this Court. For convenience the motions were consolidated for trial.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (M) & (O) which this Court may hear and determine.

FINDINGS OF FACT

The parties stipulated the following facts:

1. On or about May 17, 1988, Poplar I and Poplar II, by Cardinal Industries, Inc., an Ohio corporation, then the sole General Partner of each limited partnership, each executed and delivered to Great Western a certain Promissory Note Adjustable Rate Mortgage Loan (the "Notes"), in writing, in the original principal amounts of $2,616,000 for Poplar I and $3,970,900 for Poplar II.

2. In order to secure the payment of the Notes, Poplar I and Poplar II, on or about May 25, 1988, each executed and delivered to Great Western a certain Deed to Secure Debt and Security Agreement (the "Security Agreements"), thereby conveying to Great Western in fee simple, title to certain real properties located in Clayton County, Georgia (the "Real Properties") and thereby also granting to Great Western a security interest in certain properties, including but not limited to all buildings, structures

and other improvements located on the Real Properties as well as all rents, issues, profits and revenues accruing therefrom.

3. Pursuant to the terms of the Security Agreements at Paragraph 15 thereof, Poplar I and Poplar II also assigned to Great Western all their respective rights, titles and interests in and to the rents and revenues arising under all leases entered into by Poplar I and Poplar II with respect to the Real Properties.

4. In order to further secure the payment of each Note, on or about May 25, 1988, Poplar I and Poplar II executed and delivered to Great Western certain Assignments of Leases, whereby Poplar I and Poplar II granted, transferred and assigned to Great Western all their respective right, title and interest in and to all leases and tenancy agreements now or hereinafter existing in connection with the Real Properties, together with all rents, payments, income or profits arising or realized from said leases and tenancy agreements.

5. Poplar I failed to pay the monthly installment of principal and interest due on its Note on February 1, 1989, and is in default for all payments from that date until the present time. Poplar II failed to pay the monthly installment of principal and interest due on its Note on January 1, 1989, and is in default for all payments from that date until the present time.

6. By letters dated February 24, 1989, Great Western notified Poplar I and Poplar II that it was exercising its option, pursuant to the terms of each Note and Security Agreement, to declare the entire unpaid balance of principal and interest owed on the Notes to be immediately due and payable.

7. There is currently due Great Western from Poplar I on its Note the sum of $2,604,353.65 together with interest in the amount of $49,033.75 for the period from February 1, 1989, to the date of the filing of the petition initiating this case, plus late charges, collection fees and interest accruing. There is currently due Great Western from Poplar II the sum of $3,932,495.15 together with interest in the amount of $92,413.62 for the period from January 1, 1989 to the date of the filing of the petition initiating this case, plus late charges, collection fees and interest accruing.

8. Pursuant to the aforementioned payment defaults and by reason of certain other defaults under each Note and Security Agreement, on February 28, 1989, Great Western, in accordance with Paragraph 23 of each Security Agreement, obtained an Order from the Superior Court of Fulton County, Georgia, Case No. D–64248, appointing Larry A. Cavallaro, vice president of Hold & Hooker, Inc., as Receiver for the Real Properties.

9. The Court-authorized duties of the Receiver include the duty to take custody and control of the Real Properties, to manage the same and collect, hold and preserve the rents therefrom for the benefit of Great Western, and to pay those rents, as required, over to Great Western pending further order of the Court.

10. The Receiver, pursuant to the terms of the Order, was further permitted to retain rental income sufficient to pay the ordinary and necessary expenses incurred by the Receiver in maintaining the Real Properties.

11. On April 4, 1989, Poplar I and Poplar II each filed a petition with this Court under Chapter 11 of the Bankruptcy Code.

12. Notwithstanding this filing, Mr. Cavallaro, as Receiver for Poplar I and Poplar II, continues to operate, manage and control the Real Properties and retain the rents and profits therefrom pursuant to an Agreed Order entered by this Court.

The Court further finds the following facts from the testimony of the witnesses and the documentary evidence introduced at trial.

1. Prior to the appointment of the Receiver the Real Properties were managed by Cardinal Apartment Management Group, Inc. ("Management"), a wholly-owned subsidiary of the general partner, Cardinal.

2. Pursuant to agreement, Management charged a fee of 5% of the gross rents

received in addition to $250 each month for bookkeeping services and a potential $2 per unit performance bonus for achieving a ninety-six per cent (96%) occupancy level.

3. Additional amounts owing to Cardinal Parts Service Co., Cardinal Industries Mortgage Co., Cardinal Furniture Leasing, Cardinal Compensation, Inc. and Cardinal Industries Inc./Insurance appear on various accounts payable lists of each debtor. Other services are also performed by Cardinal Industries Services Corporation and Cardinal Ancillary Services, Inc.

4. Poplar I is a syndicated limited partnership which, according to the statement of its counsel, has approximately 31 limited partner investors. Poplar II is a nonsyndicated limited partnership in which the only limited partner is a Cardinal affiliate, Cardinal Industries Development Corp.

5. R/E Management Services, Inc. ("R/E") may also be a general partner of both Poplar I and Poplar II. R/E is not a subsidiary of Cardinal, but may be owned in whole or in part by the primary shareholder of Cardinal.

6. Neither R/E nor the Cardinal subsidiaries set forth in paragraph 3 above have filed cases in this Court. Approximately 20 other limited partnerships in which Cardinal is a general partner have, however, filed petitions under Chapter 11 of the Bankruptcy Code in this Court. Cardinal Industries of Florida, Inc. has also filed a petition under Chapter 11 which is being jointly administered with Cardinal's case.

7. In February, 1989 Cardinal, as the general partner of Poplar I and Poplar II, directed Management to remit to Cardinal all available rent receipts collected from nonsyndicated partnerships for which Cardinal serves as general partner, up to the amounts which were to be paid to the mortgage lenders of each such partnership. Such funds attributable to Poplar II were not paid to Great Western. It is not clear whether such funds were also remitted to Cardinal on behalf of Poplar I.

8. The Real Properties were well maintained and preserved by Management and occupancy levels are satisfactory.

9. Prior to the Receiver's appointment, many recurring functions and services required for real property management were performed on a centralized basis by Cardinal and its affiliates for these debtors and for approximately 1,000 other limited partnerships for which Cardinal serves as general partner.

10. Management's office in Atlanta was moved to Columbus during 1989 and many of the records and source documents necessary for the Receiver to appropriately verify charges asserted against the Real Properties have been unavailable or unable to be located.

11. Management and/or Cardinal's prepetition failure to properly segregate accounts of the various partnerships and the commingling of such funds with funds belonging to Cardinal resulted in execution against the partnerships' funds by a creditor of Cardinal which was not a creditor of these debtors.

12. All rents paid by tenants of Poplar I and Poplar II are subject to the interests of Great Western.

13. The Receiver appears to be properly managing the Real Properties.

## ISSUE OF LAW

The sole issue before the Court is whether this Court, under the discretion granted it by 11 U.S.C. § 543(d)(1), should excuse the Receiver, as a custodian, from turning over the Real Properties to the debtors as required by § 543(b).

## CONCLUSIONS OF LAW

■ The statutory test pursuant to which the Court may excuse a receiver's compliance with the turnover mandate of § 543(b) requires a finding that the interests of creditors and, if the debtor is not insolvent, of equity security holders, would be better served by permitting the receiver custodian to continue in possession. As no evidence was introduced regarding the solvency of either debtor and substantial obligations to Cardinal affiliates were improperly excluded from the debtors' bankruptcy

schedules, the Court will limit its concerns to the interests of creditors.

A review of existing case law indicates that the interests of creditors may be assessed by analyzing (1) the likelihood of a reorganization, (2) the probability that funds required for reorganization will be available, and (3) whether there were instances of mismanagement by the debtor. Even if these three prongs are resolved in favor of the debtor, the Court may excuse compliance if turnover would be injurious to creditors. *First Nat'l Bank v. Powers Aero Marine Service (In re Powers Aero Marine Service)*, 42 B.R. 540 (Bankr.S.D. Tex.1989).

Great Western conceded prior to trial that it was too early in these debtors' reorganization cases to evaluate either their reorganization potential or the feasibility of any such attempts. The focus therefore is on the debtors' prior misdirection of rent monies, the quality of Management's services and the potential for self-dealing presented by the presence of so many Cardinal-related entities as suppliers of goods and services to the Real Properties. Opposition to the motions is based primarily upon the belief that the reorganizations will be substantially hampered if the debtors are not permitted to retake possession and manage their respective assets.

The Court agrees with Judge Koger's statement that "generally the basic equities would favor a debtor or debtor-in-possession. If nothing more, a substantial weight is added to the debtor's burden of attempting to reorganize and to promulgate an acceptable plan of reorganization if debtor cannot have access to all of its assets during its initial breathing spell." *In re KCC–Fund V, Ltd*, 96 B.R. 237, 239–240 (Bankr.W.D.Mo.1989). Further, the statute contemplates turnover as the general rule. Excuse from that duty requires the party seeking such relief to demonstrate that the interests of creditors are better met by excepting the Receiver from the statutory obligation. *See* 11 U.S.C. § 543. Although the interest of unsecured creditors must be protected, the overwhelming amount of these debtors' obligations are to

Great Western. Therefore, it is primarily Great Western's interests which must be balanced against the debtors' rights.

Even though the debtors' pre-petition defaults occurred despite collection of rents apparently sufficient to pay Great Western, the Court does not believe such defaults alone bar return of the Real Properties to the control of each debtor. It is only where such mismanagement or inability to fund operations continues that turnover is inappropriate. *In re WPAS, Inc.*, 6 B.R. 40 (Bankr.M.D.Fla.1980) and *In re CCN Realty Corp.*, 19 B.R. 526 (Bankr.S. D.N.Y.1982). Evidence indicated that separate segregated accounts for the receipt of rental income have now been established and the debtors manifest intent to meet the reporting requirements imposed by the U.S. Trustee. The difficulty posed for the Court, however, is that the general partner responsible for overseeing the Real Properties, Cardinal, is itself the debtor in a recently filed Chapter 11 case. In addition, Cardinal is the general partner for more than 1,000 such partnerships having ownership of motel, apartment or retirement home properties.

It is clear from testimony in this case and in other related cases which this Court recently has heard that Cardinal has large numbers of secured creditors asserting demands against it and against the assets of many of its partnerships. Indeed a defendant class action suit is now pending which seeks a way to focus and manage the many actions against Cardinal and its related entities. Enormous energy is being consumed reacting to and dealing with all these matters. Therefore, keeping this Receiver in place temporarily while books and records are being sorted through, cash flow projections made and decisions regarding disposition of assets are being addressed could be an advantage rather than a disadvantage to the reorganizations of these debtors.

Accordingly, the Court finds that, temporarily, the interests of creditors are best served by maintaining the Receiver in place. Therefore, Great Western's motions to excuse compliance and turnover by the Receiver in Poplar I and Poplar II are

sustained. Such action is subject to review, however, when the debtors assert by pleadings served upon Great Western and all other creditors, or when Great Western and the debtors agree, that the following matters have been addressed satisfactorily.

1. Each debtor must show that an order has been entered permitting the use of cash collateral or approving an agreement reached with Great Western regarding the extent of such permitted usage.

2. Each debtor must show that its books and records, now apparently in the possession of Management, have been organized and stored such that source data is readily available for verifying accounts payables.

3. All deposit, disbursement and reporting requirements established by the U.S. Trustee must be in place, in compliance and available for review.

4. In addition to the U.S. Trustee's requirements, one separate, segregated account must be established for the deposit of security deposits belonging to the tenants of all phases of Poplar Springs.

5. All payables to Cardinal or Cardinal-related entities must be sufficiently identified with detailed explanation such that creditors and the Court are able to understand the services provided and to evaluate the reasonableness of the fees charged to the partnerships.

Once either debtor is satisfied that the stated conditions have been met, it may request the Court to order the Receiver to turn over the Real Property. Until that turnover occurs, however, the Receiver shall be excused from compliance with § 543(b) of the Bankruptcy Code and shall continue to operate the Real Properties under the terms of the Agreed Preliminary Orders Authorizing State Court Receiver to Remain in Possession and to Use Cash Collateral to Preserve Estate Property previously entered in each of these cases.

IT IS SO ORDERED.