**320**

### In re WILLOWOOD EAST APARTMENTS OF INDIANAPOLIS II, LTD., Debtor.

**Bankruptcy No. 2–90–00155.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

April 30, 1990.

See also, Bkrtcy., 114 B.R. 138.

Thomas C. Scott, Richard K. Stoval, Thompson, Hine and Flory, Columbus, Ohio, for Lincoln Nat. Bank & Trust Co.

Kenneth R. Cookson, Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for Debtor.

Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio.

Jay Alix, Southfield, Mich., Trustee for Cardinal Industries, Inc.

Charles M. Caldwell, Columbus, Ohio, Office of the U.S. Trustee.

Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, General Counsel to the Trustee.

Lori Lapin Jones, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, and Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for the Official Committee of Unsecured Creditors of Cardinal Industries, Inc.

P. Steven Kratsch, Kilpatrick & Cody, Atlanta, Ga., for the Official Committee of Unsecured Creditors of Cardinal Industries of Florida, Inc.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, for Cardinal Industries of Georgia, Inc., Cardinal Industries Mortg. Co. and Cardinal Parts Service Co.

Charles J. Taunt, Birmingham, Mich., for Cardinal Industries Services Corp.

Thomas R. Noland, Altick & Corwin, Dayton, Ohio, for Cardinal Partnership Corp. and Cardinal Partner Corp.

Gary H. Cunningham, Schlussel, Lifton, Simon, Rands, Galvin & Jackier, Southfield, Mich., for Cardinal Lodging Group, Inc. and Cardinal Apartment Management Group, Inc.

James H. Bownas, Cardinal Industries, Inc., Columbus, Ohio.

### OPINION AND ORDER ON MOTION TO EXCUSE STATE COURT RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon the motion filed by Lincoln National Bank and Trust Company ("Lincoln") to excuse compliance by state court receiver with § 543 of the Bankruptcy Code. The motion was opposed by Willowood East Apartments of Indianapolis II, Ltd., a debtor and debtor-in-possession in this Chapter 11 case ("Debtor"). The motion was heard February 20, 1990, following which the Court took the matter under advisement.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the

General Order of Reference entered in this District. This is a core proceeding which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(A), (E), (M) and (O). The following constitute findings of fact and conclusions of law.

## I. PRELIMINARY FACTS

The Debtor is the owner of certain real property known as the Willowood East Apartments of Indianapolis, II (the "Property") located in Indianapolis, Indiana. The Property includes a 60 unit apartment complex comprised of efficiency, one bedroom and two bedroom apartments.

On April 15, 1985, the Debtor executed a Promissory Note for the sum of $1,125,-000.00 payable to Cardinal Industries Mortgage Company ("CIMC"). CIMC assigned the Promissory Note to Lincoln on May 5, 1985. The Promissory Note is due and payable May 1, 1991.

The obligations of the Debtor under the Promissory Note are secured by a Mortgage, Assignment of Rents and Security Agreement (the "Mortgage") dated April 15, 1985. CIMC assigned the Mortgage to Lincoln April 30, 1985. The Mortgage was recorded on May 14, 1985. The Mortgage grants to Lincoln a lien on the Property and all personal property located thereon or relating thereto (collectively the "Collateral"), including but not limited to, all rental income and revenue from the Property (the "Rents"). The security interest in the personal property was perfected by the filing of a financing statement with the county recorder.

Under the terms of the Promissory Note, the Debtor was required to make monthly payments of principal and interest. The last payment Lincoln received directly from the Debtor occurred in March, 1989, and represented the February, 1989 installment. Thereafter the Debtor was in default of its obligations. Lincoln then initiated state court proceedings to foreclose on the Property and also sought the appointment of a state court receiver. Regency Windsor Management, Inc. (the "Receiver") was appointed receiver on June 13, 1989. The Receiver took possession of the Property on September 1, 1989, and has remained in possession since that date. In addition to taking custody and control of the Property, the Receiver was further authorized by the state court to collect all rents, issues, income and profits, and to take all necessary and appropriate action to preserve the real estate, including the management and operation of the Property. Prior to the Receiver's appointment, these duties were performed by Cardinal Apartment Management Group, Inc. ("CAMG"), a wholly-owned subsidiary of the general partner, Cardinal Industries, Inc. ("CII").

A decree of foreclosure and order of sale were entered on a default basis by the state court on October 5, 1989. A foreclosure sale was scheduled for January 10, 1990 at 10:00 a.m. On January 10, 1990, just minutes before the scheduled sale, the Debtor filed its voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.

Lincoln previously filed a motion to dismiss the Debtor's Chapter 11 petition on January 11, 1990. After an expedited hearing, the motion to dismiss was denied on January 25, 1990. At that time limited relief to initiate a new foreclosure process was granted, conditioned upon the resolution of Lincoln's relief from stay action filed on January 19, 1990. Lincoln's motion for relief from stay was denied, after hearing, on March 22, 1990.

Lincoln originally filed its motion to excuse compliance under both 11 U.S.C. §§ 543(d)(1) and (d)(2). Lincoln elected, however, at the hearing to proceed under § 543(d)(1) only.

## II. ISSUES

The sole issue before the Court is whether this Court, under the discretion granted it by 11 U.S.C. § 543(d)(1), should excuse the Receiver, as custodian, from turning over the Property to the Debtor as required by § 543(b).

## III. DISCUSSION

Lincoln argues that the Receiver should be excused from compliance with 11 U.S.C.

§ 543(b) because retention by the Receiver of the Collateral is in the best interest of creditors. There are two principal bases for Lincoln's contention: (1) that the Debtor will be unable to reorganize and (2) that the Debtor committed several acts of mismanagement prior to the appointment of the Receiver. The Debtor denies that excusing the Receiver from compliance with § 543(b) would be in the best interest of its creditors. It further denies that reorganization is unlikely or that the degree of prior mismanagement is sufficient to warrant the relief Lincoln seeks.

The sole issue presented to the Court is governed by §§ 543(b) and 543(d)(1) of the Bankruptcy Code. Section 543(b) provides that a custodian shall turn over to the debtor-in-possession any property of the estate held by such custodian, together with the rents and profits of such property that are in the custodian's possession, custody and control. A state court receiver is a custodian for the purposes of this subsection. *See* 11 U.S.C. § 101(10)(A). Therefore, § 543(b) mandates in this case that the Receiver turn over the Property as well as any rents and profits it has collected, to the Debtor unless it is excused from compliance by this Court. Section 543(d)(1) provides that a bankruptcy court may excuse compliance if the interests of creditors would be better served by permitting a custodian to continue in possession.

This Court has previously stated that the interest of creditors may be assessed by analyzing (1) the likelihood of a reorganization, (2) the probability that funds required for reorganization will be available and (3) whether there were instances of mismanagement by the debtor. *In re Poplar Springs Apartments of Atlanta, Ltd.*, 103 B.R. 146, 150 (Bankr.S.D.Ohio 1989), *citing First Nat'l Bank v. Powers Aero Marine Services (In re Powers Aero Marine Services)*, 42 B.R. 540 (Bankr.S.D.Tex.1984). The first factor has already been resolved in favor of the Debtor within the context of the Court's denial of Lincoln's motion for relief from stay and there is no reason to reach a different conclusion here since the two motions were heard together on February 20, 1990. Again, it is simply too early in the case to determine whether or not the Debtor will be able to reorganize successfully. The second factor must also be resolved in favor of the Debtor. The Rents from the Property are the only significant source of funds for reorganization and without them, it is clear that the Debtor will be unable to reorganize.

Therefore, the single remaining question is whether the previous act of mismanagement on the part of the Debtor require that the interest of creditors be served by retaining the Receiver. The acts relied on by Lincoln in support of its Motion included CAMG's failure to pay its vendors on a timely basis, resulting in a disallowance of credit by a number of those vendors. Lincoln also presented evidence that CAMG did not have funds on hand to repay tenant security deposits and that the resident manager for this Property kept irregular office hours. Lincoln has failed to adduce any evidence, however, that these acts of mismanagement by this Debtor differed in kind or degree from those in *Poplar Springs*. Moreover, Lincoln has failed to show that such acts are likely to reoccur once the Property is turned over.

Faced with the identical issue, this Court in *Poplar Springs* established five conditions to be satisfied by the Debtor before a turnover order would be issued. These conditions were as follows:

1. Each debtor must show that an order has been entered permitting the use of cash collateral or approving an agreement with Great Western regarding the extent of such permitted usage.

2. Each debtor must show that its books and records, now apparently in the possession of Management, have been organized and stored such that source data is readily available for verifying accounts payable.

3. All deposits disbursement and reporting requirements established by the U.S. Trustee must be in place, in compliance and available for review.

4. In addition to the U.S. Trustee's requirements, one separate, segregated

account must be established for the deposit of security deposit belonging to the tenants of Poplar Springs.

5. All payables to Cardinal or Cardinal related entities must be sufficiently identified with detailed explanation such that creditors and the Court are able to understand the services provided and to evaluate the reasonableness of the fees charged to the partnerships.

*Poplar Springs,* 103 B.R. 146, 151.

In this case, the Debtor presented testimony that each of these conditions, with the exception of a cash collateral order, has been fulfilled. The cash collateral concerns are being addressed in the Court's ruling on the Debtor's motion for an order authorizing the use of cash collateral. The Debtor's books and records are now located in Columbus, Ohio and have been organized such that the source data is available to any interested party who desires to review them. R.L.J., Inc., has been employed by CAMG to handle the bookkeeping for all of the apartment cases. In addition, the Debtor has complied with the disbursement and reporting requirements established by the United States Trustee and has opened bank accounts at Bank One for these purposes. A separate account has been set up at Bank One for security deposits. Finally, the Debtor has set forth on its schedules the prepetition amounts owed to CII and its affiliates and the amounts of management fees payable to CAMG, as well as, those services to be rendered by CAMG. Further, the Debtor's monthly operating reports to be filed with the Court must set out in detail explanations for all payables to Cardinal or Cardinal related entities.

Therefore, the Receiver shall be, and the same hereby is ordered to turn over the Property and any Rents it has collected therefrom, to the Debtor.

## IV. CONCLUSION

Based on the foregoing, the Motion Of Lincoln National Bank And Trust Company To Excuse Compliance By State Court Receiver With § 543 Of The Bankruptcy Code must be, and hereby is denied.

IT IS SO ORDERED.