In re **THYMEWOOD APARTMENTS, LTD., Bel Aire Apartments II, Ltd., Bel Aire Apartments, Ltd., Centre Lake Apartments, Ltd., Centre Lake Apartments, II Ltd., Blossom Corners Apartments II, Ltd., Centre Lake Apartments III, Ltd., Debtors.**

Bankruptcy Nos. 2–90–01614, 2–90–01717, 2–90–01827 to 2–90–01829, 2–90–01836, 2–90–02096.

United States Bankruptcy Court, S.D. Ohio, E.D.

June 28, 1991.

Thomas I. Blackburn, Christine W. Schmenk, John Andrew Merkle, Denmead, Blackburn & Brown, Columbus, Ohio, for Thymewood Apartments, Ltd., Blossom Corners Apartments II, Ltd.

Leonard A. Carlson, Todd R. Marti, Schottenstein, Zox & Dunn, Columbus, Ohio, for Amerifirst Bank.

Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for Official Committee of Unsecured Creditors.

Jay Alix, Jay Alix & Associates, Southfield, Mich., Chapter 11 Trustee.

Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio, co-counsel to the trustee.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio, Columbus Office of the United States Trustee for Region IX.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, Charles J. Taunt, Charles J. Taunt & Associates, Birmingham, Mich., Gary H. Cunningham, Kramer Mellen, P.C., Southfield, Mich., special counsel to the Trustee of the Consolidated Estate.

James Bownas, Legal Counsel, Cardinal Industries, Inc., Columbus, Ohio.

## OPINION AND ORDER ON REMAND

BARBARA J. SELLERS, Bankruptcy Judge.

### I. *Procedural History and Facts*

These matters are before the Court following an appeal by Amerifirst Bank N.A. ("Amerifirst" or "RTC"[1]) of this Court's decision of *In re Cardinal Industries, Inc.*, 118 B.R. 971 (1990). The District

---

1. The Resolution Trust Corporation is now the conservator for Amerifirst Bank, N.A. Conse-quently, depending on the timing, reference is made either to "Amerifirst" or "RTC."

Judge remanded these matters to this Court "for reconsideration of its opinion in light of the adopted construction of the Florida statute." *In re Thymewood Apartments, Ltd.,* 123 B.R. 969, 979 (S.D.Ohio 1991) ("Remanding Opinion").

These matters originally came before this Court as core proceedings on each debtor's motion seeking authorization to use cash collateral. 28 U.S.C. §§ 1334, 157(b) and 11 U.S.C. § 363(c)(2). Each motion involved identical issues of Florida law, and the Court heard and decided them together.

The seven partnerships whose motions were heard jointly (collectively "Partnership Debtors")[2] are each a debtor in a Chapter 11 case pending before this Court. Each is the owner of real property located in the state of Florida on which an apartment complex has been built. Each partnership has Cardinal Industries, Inc. ("CII") or its subsidiary, Cardinal Industries of Florida, Inc. ("CIF") as its managing general partner. Both CII and CIF are Chapter 11 debtors before this Court.

The RTC holds a promissory note executed by each Partnership Debtor and secured by a mortgage, assignment of rents and security agreement in the signatory partnership's real property. The dispute centers on the interpretation and application of the assignment of rent provision contained in each mortgage.

Cardinal Industries Mortgage Company ("CIMC"), also a Chapter 11 debtor in this Court, originated six of the seven loans and subsequently assigned the corresponding notes and mortgages to Amerifirst. Amerifirst originated and prepared the documents for the remaining partnership loan. The assignment of rents clause in the CIMC documents states:

26. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues, including all security deposits, of the Project, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Project, regardless of to whom the rents and revenues of the Project are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby directs each tenant of the Project to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Project as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Project in person, by agent or by a court-appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Project as specified in this paragraph as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement

---

**2.** Thymewood Apartments Ltd., Blossom Corners II, Ltd., Bel Aire Apartments I, Ltd., Bel Aire Apartments II, Ltd., and Centre Lake Apartments I, Ltd., Centre Lake Apartments II, Ltd., and Centre Lake Apartments III, Ltd.

that Lender exercises its rights to such rents....

The assignment of rents in the Amerifirst document states:

18. As additional security for the payment of the indebtedness herein described and the performance of the covenants herein contained, Mortgagor hereby assigns to Mortgagee all the rents, income and profits due and to become due under leases of the premises made both before and after the date hereof, Mortgagor reserving possession and the right to collect such rents, income and profit only so long as no default exists in the payment of the indebtedness secured hereby or in the performance of the covenants and agreements herein contained. In the event of such a default, Mortgagee shall have the right to possession and to collect all the rents, income and profits and Mortgagor herewith directs any lessee, tenant, statutory trustee, or other person in possession thereof to pay and deliver same to Mortgagee, herewith granting and releasing to Mortgagee all right to retain possession and to collect such rents, income and profits in such event. This Assignment shall become null and void upon the release of this mortgage.

The Florida Statute relating to rent assignments provides:

A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee. Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's right to the rents, any payments therefrom to be made solely to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property. Any undisbursed portion of said rents shall be disbursed in accordance with the court's final judgment or decree.

Fla.Stat. § 697.07 (1987).

In its prior decision this Court held, as a matter of law, that Fla.Stat. § 697.07 did not effectuate an absolute transfer of ownership rights in the rents, but merely changed the procedure by which a mortgagee could enforce its security interest in rents. *Cardinal,* 118 B.R. at 979. Based upon that interpretation of Florida law, this Court authorized each Partnership Debtor to use cash collateral for the payment of ordinary and necessary expenses to maintain and operate its apartment property.

On appeal the District Judge interpreted Fla.Stat. § 697.07 as allowing parties to provide for an absolute transfer of ownership rights in the rents. The District Judge recognized that this interpretation effectuated a change in Florida law which was both substantive in nature and, with regard to the last part of the statute, also procedural in nature. Although that court determined the meaning of Fla.Stat. § 697.-07, it did not apply that meaning to the facts of these cases. Instead, the District Judge remanded the cases to this Court "for determination of the effect, if any, this construction has on its earlier decision that the rent proceeds became part of the debtor's estate." Remanding Opinion at 979. The District Judge specifically "express[ed] no opinion on the operation or effect of the statute." Remanding Opinion at 979.

## II. *The Position of Each Party on Remand*

Following the remand each party and the Official Committee of Unsecured Creditors ("Committee") for the substantively consolidated estates of Cardinal Industries, Inc. and its related corporate entities submitted briefs. The Committee also participated in oral argument. The Partnership Debtors and RTC submitted post-argument briefs and the Court took the matters under advisement.

As a result of the District Judge's construction of the Florida statute, the parties' respective positions have changed. The RTC now contends that the assignment of rents clauses, combined with the District Judge's interpretation of Fla.Stat. § 697.07, grant it absolute ownership rights in the rents. Thus, the rents are not property of

the Partnership Debtors' estates and are not cash collateral. RTC concludes that the Partnership Debtors have no right to the rents even to pay the normal operating expenses of their properties because RTC "owns" and controls the usage of those rents.

The Partnership Debtors contend that even with the District Judge's construction of Fla.Stat. § 697.07, the rents still should be considered property of their respective bankruptcy estates and, thus, cash collateral. Because the loan documents with the rent assignments originated prior to the effective date of Fla.Stat. § 697.07, they argue that the statute's substantive changes of Florida law do not apply to these cases. The Partnership Debtors conclude, that even if Fla.Stat. § 697.07 is applicable, the agreements do not provide for absolute transfer of ownership rights in the rents to RTC. Finally, even if it applies to these mortgage agreements, Partnership Debtors argue, as suggested by the District Judge, that Fla.Stat. § 697.07 is preempted by the Bankruptcy Code.

### III. Issues To Be Determined

1. Under Florida Constitutional provisions, can Fla.Stat. § 697.07 be applied retroactively to the interests in rents the Partnership Debtors granted CIMC and Amerifirst?

2. If Fla.Stat. § 697.07 can be applied retroactively, does it apply to the assignment of rents provisions before the Court?

3. If Fla.Stat. § 697.07 can be applied retroactively and applies to these provisions, is its application preempted by the provisions of the Bankruptcy Code?

### IV. Discussion

#### A. Can Florida Statute § 697.07 Be Applied Retroactively?

1. *Retroactivity Under Florida Law Generally*

■ Florida law establishes that a newly enacted law applies only prospectively unless the legislature clearly indicates otherwise. *Walker & La Berge Inc., v.*

*Halligan,* 344 So.2d 239, 241 (Fla.1977) and cases cited therein. Further, Florida courts will not infer that the legislature intended retroactive application without an express provision for it. *Fleeman v. Case,* 342 So.2d 815, 817 (Fla.1976). Rather, "the forward or backward reach of proposed laws is irrevocably assigned in the forum best suited to determine that issue" (the legislature). *Fleeman* at 817.

■ Even if the Florida legislature intends a statute to apply retroactively, the constitutionality of such application must still be examined. Although Fla.Stat. § 697.07 does not exhibit facial legislative intent for retroactivity, the parties have raised numerous issues regarding its retroactive application.

The Florida Constitution provides that no "law impairing the obligations of contracts shall be passed." Art. I § 10. Further, Florida courts have determined that "safeguarding the validity of [mortgages] and assuring the right of enforcement thereof, is an obligation of constitutional dimensions." *David v. Sun Federal Savings & Loan,* 461 So.2d 93, 95 (Fla.1984).

■ If a statute has the effect of rewriting a contract or, more specifically, changing the substantive rights of the parties under a contract, the statute cannot be applied retroactively regardless of legislative intent. *Manning v. Travelers Insurance Co.,* 250 So.2d 872, 874 (Fla.1971). However, if the statute merely changes the procedure by which a party enforces its rights under a contract, the constitutional prohibition against retroactivity is not violated. *Pinellas County v. Banks,* 154 Fla. 582, 19 So.2d 1, 3 (1944). Thus a distinction must be made between substantive and procedural changes in statutes.

■ Coupled with these principles of constitutional law are important principles of Florida contract law. Generally the laws in effect when a contract is formed govern the enforceability of that contract. That law becomes a contract term, as if expressly stated therein. *Ivey v. State ex rel. Watson,* 3 So.2d 345, 348 (Fla.1941). Thus, subsequent changes in statutory law

cannot alter the substantive law in effect when the contract is formed.

## 2. *Florida Substantive Law Prior to Florida Statute § 697.07*

■ The RTC contends that substantive Florida law was not changed by the enactment of Fla.Stat. § 697.07. RTC relies upon an earlier Florida statute, located in a chapter entitled "Savings & Loan Associations," which provided in part:

(4) Security Instrument. Every real estate loan shall be secured by a mortgage, deed of trust or other transaction or instrument upon the real estate securing the loan, according to any lawful and recognized practice which is suited to the transaction. Any such instrument or transaction constituting a lien or claim is herein termed a "mortgage." Such mortgage shall provide specifically for full protection to the association with respect to such loan and additional advances and the usual insurance risks, ground rents, taxes, assessments, other governmental levies, maintenance, and repairs. It may provide for an assignment of rents, and, if such assignment is made, such assignment shall be absolute upon the borrower's default, becoming operative upon written demand made by the association. All such mortgages shall be recorded in accordance with the law of this state.

Fla.Stat. § 665.0731 (1969), repealed (1981).[3]

RTC contends that this statute and, thus, Florida law, permitted the absolute transfer of ownership interests in rents prior to the enactment of Fla.Stat. § 697.07. Thus, argues RTC, retroactive application of Fla. Stat. § 697.07 is not proscribed because Fla.Stat. § 697.07 does not change the substantive law. However, the Partnership Debtors contend that this statute, buried in a chapter relating to "Savings & Loan Associations," is inapplicable. The Partnership Debtors also point out that this statute has never been interpreted by any Florida court.

■ The RTC counters that former Fla. Stat. § 665.0731(4) should be given the same interpretation as the District Judge's controlling interpretation of Fla.Stat. § 697.07. As support for that position RTC relies upon the Florida Supreme Court case of *Oppenheimer & Co. Inc. v. Young,* 456 So.2d 1175 (Fla.1984), *vacated,* 470 U.S. 1078, 105 S.Ct. 1830, 85 L.Ed.2d 131 (1985). However, *Oppenheimer* refers to the interpretations of similar statutes (securities laws) in different jurisdictions. Further, while a newly enacted statute is given an interpretation similar to a "prototype statute," the reverse is not true. *See,* 456 So.2d 1175. RTC's attempt to bootstrap the District Judge's interpretation of Fla. Stat. § 697.07 to former Fla.Stat. § 665.-0731(4) is not persuasive.

■ An unused, uninterpreted, repealed state statute should not be given life for the first time by a bankruptcy judge sitting in a district unrelated to that state. No Florida court ever interpreted or relied upon Fla.Stat. § 665.0731(4), despite its existence in excess of ten years. More importantly, there is no indication that this provision, buried in a section captioned "Security Instrument," was intended to do more than establish a procedure for the enforcement of a security interest in rents. Even that attempt appears to have failed, as Florida courts continued to follow the common law regarding rent assignments. *Bornstein v. Somerson,* 341 So.2d 1043 (Fla.Dist.Ct.App.1977). The well-established common law required a mortgagee to obtain possession of the mortgaged real property, by consent of the mortgagor or the appointment of a receiver or foreclosure, prior to any entitlement to the rents. *Carolina Portland Cement Co. v. Baumgartner,* 99 Fla. 987, 128 So. 241, 244 (1930) and *White v. Anthony Investment Co.,* 119 Fla. 108, 160 So. 881, 882 (1935).

Specifically, the *Bornstein* court held: "the general rule with respect to a mortgage pledging rents, issues and profits is that the mortgagee becomes entitled to re-

---

**3.** Neither party was aware of this statute until shortly before the oral argument on remand.

Both RTC and the Partnership Debtors later briefed this issue.

ceive such rents, issues and profits to be credited against his mortgage from the time he takes possession of the property either by consent or through the appointment of a receiver in foreclosure proceedings." *Bornstein*, 341 So.2d 1043, 1048–1049. *See, also, In the Matter of Hamlin's Landing Joint Venture*, 77 B.R. 916, 919 (Bankr.M.D.Fla.1987) and *In re Parham*, 72 B.R. 604, 605 (Bankr.M.D.Fla. 1987). These courts consistently enforced rent assignments as security interests under Florida common law and ignored the existence of Fla.Stat. § 665.0731(4).

3. *Application of The Principles of Retroactivity to Florida Statute § 697.07*

■ The District Judge in the Remanding Opinion determined that Fla.Stat. § 697.07 deviated both substantively and procedurally from prior Florida law. Specifically, as a matter of law, the District Judge interpreted Fla.Stat. § 697.07 to allow parties to agree to an absolute transfer of ownership rights in rents upon the mortgagor's default. Prior to Fla.Stat. § 697.-07, Florida courts refused to interpret rent assignments in this manner and treated them as security interests only. Thus, the District Judge's holding and a review of prior Florida law indicate that Fla.Stat. § 697.07 changed the substantive law of Florida regarding the enforceability of absolute rent assignments.

The District Judge recognized that no Florida State Court had squarely decided the appropriate interpretation of Fla.Stat. § 697.07 and, thus, relied upon bankruptcy court decisions. Since the District Judge's decision, two Florida state courts have held that Fla.Stat. § 697.07 is merely a remedial or procedural change in Florida law and, thus, the statute may be retroactively applied. *See, Nassau Square Association v. Insurance Commissioner of California*, 579 So.2d 259 (Fla.Dist.Ct.App.1991) and *Oakbrooke Associates v. Insurance Commissioner of California*, 581 So.2d 943 (Fla.Dist.Ct.App.1991).

Although the Florida Supreme Court has yet to definitively interpret Fla.Stat. § 697.-

07, it has indicated that the section was meant "to create a simple, equitable and inexpensive method by which a mortgage lender could enforce an assignment of rents contract." *Haven Federal Savings & Loan Association v. Kirian*, 579 So.2d 730, 733 fnt. 1 (Fla.1991).

However, given the District Judge's construction and the controlling principles of Florida constitutional law, this Court must find that Fla.Stat. § 697.07 cannot be applied retroactively. Indeed, this Court specifically recognized that necessary result in its original opinion. *Cardinal* at 979.

Ironically, the cases relied upon by RTC while asserting ownership rights on appeal, are the very cases which prohibit the retroactive application of Fla.Stat. § 697.07. *See In re 163rd Street Mini Storage, Inc.*, 113 B.R. 87 (Bankr.S.D.Fla.1990). *See, also, In re Camelot Associates Ltd.*, 102 B.R. 161, 166 (Bankr.D.Minn.1989). The *Camelot* court interpreted Fla.Stat. § 697.07 as the District Judge did in these cases on appeal as a substantive change in Florida law and specifically held:

The language of FLA.STAT. § 697.07 contains no explicit language authorizing a retroactive application of the statute. The structure of the Florida law governing the enforcement of assignments of rents prior to October 1, 1987, gave Debtors certain vested rights and expectations in the ongoing income stream from their mortgaged properties, however qualified and/or limited in scope and duration those rights may have been in the event of their default under the mortgages. Applying the statute retroactively to the relationships in these cases—created under instruments executed three to four years before the effective date of the statute—would impermissibly impair these rights and expectations....

*Camelot* at 166.

Both the *Camelot* court's and this Court's analysis establish that under Florida Constitutional law, Fla.Stat. § 697.07 cannot be applied retroactively when it is interpreted to allow absolute transfers of ownership rights in rents.

The effective date of Fla.Stat. § 697.07 is October 1, 1987. The loan documents of the Partnership Debtors were executed prior to that date.[4] Thus, when the parties executed the rent assignments, Florida common law controlled. That law characterized those assignments as security interests only and required possession, a receiver, or foreclosure prior to realization of secured party's interest in the rents. The parties expected this result. Therefore, because the District Judge's interpretation of Fla.Stat. § 697.07 changes the Florida substantive law regarding rent assignments, § 697.07 cannot be retroactively applied to these Partnership Debtors' loan documents.

█ Accordingly, the rents, even after default, are "owned" by the Partnership Debtors, are property of each debtor's estate and are cash collateral under 11 U.S.C. § 363 and § 552. Pursuant to this Court's initial opinion, each Partnership Debtor is authorized to use this cash collateral to pay ordinary, necessary expenses to maintain and operate its property.

### B. The Intent of the Parties as Expressed in Their Agreements.

Because all parties and this Court desire full resolution of these matters, some factual determinations are also important. Even if this Court is in error and Fla.Stat. § 697.07 may be applied retroactively, such application would be appropriate only if the parties intended by their agreements to transfer ownership rights in the rents under the assignment.

The Remanding Opinion gave this Court explicit instructions to determine the effect, *if any*, its construction of Fla.Stat. § 697.07 has on this Bankruptcy Judge's

earlier decision that the rent proceeds became part of each Partnership Debtor's estate. In remanding this case, the District Judge specifically *"expresses no opinion on the operation or effect of the statute."* Remanding Opinion at 979. (emphasis added.) Because the District Judge made no factual determinations, the application of Fla.Stat. § 697.07, as a matter of fact, to the agreements at issue is left to this Court.

█ The District Judge held "that the Florida statute allows for the conferral of an ownership interest in the rents generated from the property ... upon default by the mortgagor and notice given by the mortgagee." Remanding Opinion at 797. Under this interpretation, Fla.Stat. § 697.07 *allows* the parties to agree to a transfer of ownership rights in the rents. It does not mandate such transfer without an agreement. The parties may still agree to some other interest in the rents short of absolute ownership rights.

█ The language in an agreement is the starting point for determining the parties' intent. *See Boat Town U.S.A. v. Mercury Marine Division of Brunswick Corp.*, 364 So.2d 15, 17 (Fla.Dist.Ct.App. 1978). Under Florida law a court has a duty "to place itself in the situation of the parties and from a consideration of the surrounding circumstances the occasion, and apparent object of the parties, to determine the meaning and intent of the language employed." *Bornstein*, 341 So.2d at 1047. Further, the content and language of the entire provision must be examined, not just one phrase of the provision. *See, West Yellow Pine Co. v. Sinclair*, 90 So. 828, 831 (Fla.1922) and *Blackshear MFG. Ga. v. Fralick*, 88 Fla. 589, 102 So. 753, 754 (1925).

---

**4.** Bel Aire Apartments, Ltd.March 27, 1985

Bel Aire Apartments, Ltd. II — August 1, 1985

Centre Lake Apartments, Ltd. I — September 24, 1986

Centre Lake Apartments, Ltd. II — September 24, 1986

Centre Lake Apartments, Ltd. III — September 24, 1986

Blossom Apartments, Ltd. II — December 22, 1981

Thymewood Apartments, Ltd. — December 5, 1984

Because the evidence is scant regarding the parties' intent, the Court will look primarily to each agreement to determine intent. Of the seven rent assignment provisions at issue, Amerifirst was a party only to one. The language of that provision is painfully clear on its face without further interpretation by this Court:

> 18. As additional security for the payment of the indebtedness herein described and the performance of the covenants herein contained, Mortgagor hereby assigns to Mortgagee all the rents, income and profits due and to become due under leases of the premises made both before and after the date hereof, Mortgagor reserving possession and the right to collect such rents, income and profit only so long as no default exists in the payment of the indebtedness secured hereby or in the performance of the covenants and agreements herein contained. In the event of such a default, Mortgagee shall have the right to possession and to collect all the rents, income and profits and Mortgagor herewith directs any lessee, tenant, statutory trustee, or other person in possession thereof to pay and deliver same to Mortgagee, herewith granting and releasing to Mortgagee all right to retain possession and to collect such rents, income and profits in such event. This Assignment shall become null and void upon the release of this mortgage.

The Court is unable to conceive *any* argument that this provision is anything more than a security interest in the rents. Its very terms state "as additional security." Further, nothing in that provision even mentions "absolute" or "ownership." Upon default Amerifirst was entitled only to possessory, not ownership, rights in the rents for the purpose of collection and application to the debt. Thus, even if Fla. Stat. § 697.07 could apply retroactively to

this provision, the parties did not agree to such an application.

Ironically, the remaining six agreements between each Partnership Debtor and CIMC provide RTC a better argument than its own documents. However, because RTC was not a party to these agreements, RTC has no first-hand knowledge of the parties' intent.

As a matter of course, this Court has observed that CIMC used a standard form of document for most of the mortgages it originated. That form was used in a large number of states and did not appear to contemplate variations in state law of the nature asserted by RTC.

To support its conclusion that absolute ownership was intended by the other parties, RTC relies primarily upon the language set forth earlier in this opinion that the: "Borrower hereby absolutely and unconditionally assigns and transfers to Lender [CIMC] all the rents and revenues." However, this phrase is taken out of context. It is prefaced by "As part of the consideration for the indebtedness." Thus, the rent assignments are an integral part of the mortgage and cannot be separated.

The District Judge recognized the parties' agreements are ambiguous. Remanding Opinion at 974. At first glance it appears that the parties to the agreement (CIMC and the Partnership Debtors) intended an "absolute assignment" and "not an assignment for additional security only." Such an inferred intent, however, is inconsistent with other provisions of the document which place a duty upon the lender to apply the rents to the costs of maintaining the property following the mortgagor's default.[5] This required duty of the lender is inconsistent with lender's alleged absolute ownership interest in the rents. Further, Paragraph 26 provides "this as-

---

**5.** Paragraph 26 provides in part:

All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument shall be applied first to the costs, if any, of taking control of and managing the Project and collecting the rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, costs of repairs to the Project, premiums on insurance policies, taxes, assessments and other charges on the Project, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Project and then to the sums secured by this Instrument.

signment of rents shall terminate at such time as this Instrument ceases to secure indebtedness held by lender." Presumably if the debtor cured the default, the debtor is entitled to collect the rents again.

From a reading of the entire agreement the parties clearly did not intend to separate the rents from the underlying property. Rather, the rents, as provided in these agreements, are inextricably intertwined with the real estate. The provisions of the assignment of rents clause cannot consistently be read to effectuate transfer of absolute ownership rights in rents.

This last factual conclusion is the only reasonable reconciliation of conflicting provisions in that agreement. This position is supported by Judge Yaco's "common sense observation" in *In re Rancourt*, 123 B.R. 143 (Bankr.D.N.H.1991). Although *Rancourt* involved an oversecured creditor, the following reasoning is applicable here:

> [There is] the common sense observation that "rents do not spring from the ground" and that if the mortgagee seeks to collect the rents the mortgagee must likewise undertake the responsibilities and liabilities of management and operation of the business premises to justify receiving future rent payments. *Cf. In re Prichard Plaza Assoc. Ltd. Partnership*, 84 B.R. 289, 298 (Bankr.D.Mass. 1988). To do otherwise would in effect have the mortgagor act as an indentured servant acting for the mortgagee in operation of the business while allowing the mortgagee to take the fruits of the mortgagor's continuing efforts without any of the liabilities.

*Rancourt* at 148.

Especially in cases involving income-producing property, the rental income is crucial to effective operation of the property in or out of bankruptcy. The rents are the partnership's only means to pay ordinary operating costs for the property. If the Partnership Debtor retains ownership of the property but loses use of its rents, those expenses may go unpaid. Failure to pay expenses probably will cause a decrease in income, and, therefore, a decrease in value, as the property deteriorates.

When a default has occurred, the rental income of the property becomes even more important to the partnership. To conclude that the parties agreed that the mortgagee is entitled to absolute ownership of the rents (not just possession) upon the mortgagor's default would ignore common sense and would ignore many other provisions of the agreement.

The Court's factual conclusions based upon the parties' agreements follow the historical interpretations of rent assignment provisions. As set forth above, prior to 1987, Florida law consistently treated such agreements as security interests only. With the enactment of Fla.Stat. § 697.07, the District Judge hearing these cases on appeal found that parties could agree to something more. However, this Court believes that even if Fla.Stat. § 697.07 applies to these cases, these agreements have too many internal conflicts to be read as indicating a clear intent to effectuate an absolute ownership transfer in rents. Such a departure from previous practice requires a stronger showing by RTC that a different result was intended. RTC did not make that showing here.

The better approach is to read these agreements consistent with the historical reading of similar agreements and conclude that, whatever the parties intended, it was not an absolute transfer of ownership rights in the rents to the mortgagee upon the mortgagor's default. The apparent objective of the parties was to provide the mortgagee with a security interest in rents and to permit the mortgagee to protect its interest in the real property after default. This factual conclusion is based upon a rational, reasonable reconciliation of the entire agreement and not an overly technical analysis of certain selected provisions.

### C. Preemption.

The Remanding Opinion further suggested that a preemption issue may arise on remand. The District Judge referred to a United States Supreme Court case decided under the Bankruptcy Act of 1898 which held that parties' respective rights in rents are determined under state law unless those state laws are preempted by a provi-

sion of federal bankruptcy law. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

RTC and the Debtors briefed the preemption issues. However, the Court has determined that Fla.Stat. § 697.07 either cannot be applied retroactively as a matter of law or does not apply to these facts because the parties did not intend to transfer absolute ownership rights. To decide the preemption issue presupposes that Fla.Stat. § 697.07 applies and that the parties intended an absolute transfer of ownership interests in rents.

 This Court is hesitant to decide such an important issue as preemption when such decision is not required for resolution of the matters before the Court. Based upon the finding that Fla.Stat. § 697.07 does not apply to the agreements between these Partnership Debtors and Amerifirst, the federal preemption issue is not ripe for adjudication and will not be decided at this time.

### V. *Conclusion*

Based upon the foregoing, the Court finds that Fla.Stat. § 697.07, as interpreted by the District Judge, cannot be applied retroactively to the loan agreements of these seven Partnership Debtors. Further, the Court finds that the parties did not intend to create an absolute transfer of ownership rights in the rents, even if, as the District Judge found, Fla.Stat. § 697.07 permits such transfers.

Accordingly, each Partnership Debtor retains the ownership of its rents and those rents are property of each Partnership Debtor's estate. Although those rents are the cash collateral of RTC, consistent with this court's initial opinion, each Partnership Debtor may use the rents only to pay the ordinary and necessary operating expenses to maintain its property. Such usage is subject to this Court's prior orders regarding the use of cash collateral. *See, In re Willowood East Apartments of Indianapolis II, Ltd.*, 114 B.R. 138 (Bankr.S.D.Ohio 1990).

IT IS SO ORDERED.

## JUDGMENT ENTRY

Judgment in the above captioned cases in the matters on remand is hereby entered in favor of each Partnership Debtor listed above and against Resolution Trust Corp., as conservator for Amerifirst Bank N.A., pursuant to an opinion and order dated June 28, 1991.

IT IS SO ORDERED.