**In re CALIFORNIA GARDENS APARTMENTS, LTD., Shadow Bay Apartments II, Ltd., Crystal Court Apartments, Ltd., Pine Barrens Apartments, Ltd., Meadowdale Apartments, Ltd., Jefferson Way Apartments, Ltd., Pelican Pointe Apartments, Ltd., Rivers End Apartments II, Ltd., Holly Sands Apartments II, Ltd., Oakwood Manor Apartments, Ltd., Holly Ridge Apartments, Ltd., Mark Landing Apartments, Ltd., Hillcrest Villa Apartments, Ltd., Debtors.**

**Bankruptcy Nos. 2–91–00263, 2–91–00265 to 2–91–00272, 2–91–00291, 2–91–00427, 2–91–00429 and 2–91–00430.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Aug. 15, 1991.

Hywel Leonard, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for RTC.

Michael C. Hammer, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for all debtors.

Marilyn Shea–Stonum, Carol G. Stebbins, Jones, Day, Reavis & Pogue, Columbus, Ohio, for Chapter 11 Trustee for The Consolidated Cardinal Entities.

Jay Alix, Jay Alix & Associates, Southfield, Mich., Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, for Chapter 11 Trustee.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio, Columbus Office of the U.S. Trustee for Region IX.

Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for the Official Committee of Unsecured Creditors.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, Charles J. Taunt, Charles J. Taunt & Associates, Birmingham, Mich., Gary H. Cunningham, Kramer Mellen, P.C., Southfield, Mich., for the Trustee of the Consolidated Estate.

James Bownas, Legal Counsel, Cardinal Industries, Inc., Columbus, Ohio.

## OPINION AND ORDER ON MOTIONS SEEKING TURNOVER AND TO USE RENTS AND MOTION TO EXCUSE COMPLIANCE WITH TURNOVER

BARBARA J. SELLERS, Bankruptcy Judge.

### I. *Preliminary Matters*

These matters are before the Court on various motions of the parties under 11 U.S.C. §§ 543(b) and (d) and § 363(c)(2).

Each debtor [1] ("Partnership Debtor[s]") seeks turnover of its property from the control of a state court appointed receiver and authority to use the rents which the Partnership Debtors contend are cash collateral. The Resolution Trust Corporation, as Conservator of Florida Federal Savings, F.S.B., ("RTC" or "Florida Federal") opposes each Partnership Debtor's motion and further requests that the Court excuse compliance with the turnover provisions of 11 U.S.C. § 543(b).

The Court has jurisdiction in these contested matters under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. These are core proceedings which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(E) and (M).

II. *Procedural Background and Facts*

Each Partnership Debtor owns real property in Florida on which an apartment complex has been built. Cardinal Industries, Inc. or Cardinal Industries of Florida, Inc. is the managing general partner of each Partnership Debtor. RTC holds promissory notes executed by each Partnership Debtor. Those notes are each secured by a mortgage, security agreement and assignment of rents relating to the respective property of each Partnership Debtor. After each Partnership Debtor defaulted in payments on its note, Florida Federal had a state court receiver appointed for each property. These receivers have continued to control the properties even after each Partnership Debtor filed its voluntary petition in January 1991.

Predictably, each Partnership Debtor seeks to regain control of its property and has filed a motion to compel turnover pursuant to 11 U.S.C. § 543(b). Each Partnership Debtor also seeks authority to use its rents as cash collateral pursuant to 11 U.S.C. § 363(c)(2). RTC objects to both requests and contends that under Florida law, the rents are not property of the respective partnership estates because each Partnership Debtor had absolutely and unconditionally assigned the rents to Florida Federal. RTC asserts that because these rents are not property of each Partnership Debtor's estate, this Court should not require turnover. Even if the rents are found to be property of each Partnership Debtor's estate, RTC argues that the interests of each estate's creditors are best served by excusing compliance with the turnover. *See,* 11 U.S.C. § 543(d). Two receivers, Kenneth W. Heretick and Peter Bursik, also responded in seven of these cases.[2] Neither expressed a preference regarding the resolution of the turnover or cash collateral motions, but, rather, sought guidance from this Court as to the proper disbursement of the funds which each holds.

The parties presented evidence to the Court in support of their respective positions. Following that hearing the Court orally found the following:

> THE COURT: ... I do not believe that I have heard any evidence here today which would convince me that mismanagement would be a cause for relief on anyone's part.
>
> *        *        *        *        *        *
>
> So as far as I'm concerned, these issues are going to be resolved on how the problem about the Florida rents is resolved and, ... if it is resolved such that the debtor has no right to use any of the rents, then I will have to consider whether that fact bars a turnover....

The Court reserved final determination in these matters until a decision was made in related proceedings regarding the "Flor-

---

**1.** California Garden Apartments, Ltd.; Shadow Bay Apartments II, Ltd.; Crystal Court Apartments, Ltd.; Pine Barrens Apartments, Ltd.; Meadowdale Apartments, Ltd.; Jefferson Way Apartments, Ltd.; Pelican Pointe Apartments, Ltd.; Rivers End Apartments II, Ltd.; Holly Sands Apartments II, Ltd.; Oakwood Manor Apartments, Ltd.; Holly Ridge Apartments, Ltd.; Mark Landing Apartments, Ltd.; and Hillcrest Villa Apartments, Ltd.

**2.** Mr. Heretick filed responses in Crystal Court Apartments, Ltd., Meadowdale Apartments, Ltd., Holly Sands Apartments II, Ltd., Oakwood Manor Apartments, Ltd., Mark Landing Apartments, Ltd. and Hillcrest Villa Apartments, Ltd. Mr. Bursik filed a response in Holly Ridge Apartments, Ltd.

ida rents issue." That issue has now been decided. *See, In re Thymewood Apartments Ltd.*, 129 B.R. 505 (1991) (decision on remand). For the reasons which follow, the Court finds that the rents are cash collateral in which RTC has a security interest, that each Partnership Debtor is entitled to a turnover of its real and personal property, and that the rents may be used within guidelines previously set forth by the Court in *In re Willowood East Apartments of Indianapolis II, Ltd.*, 114 B.R. 138 (Bankr.S.D.Ohio 1990).

### III. *The Issues*

The issues before the Court are:

1. Under applicable Florida law, what respective rights do the Partnership Debtors and RTC have in the rents?

2. Are the various Partnership Debtors entitled to have their properties turned over under 11 U.S.C. § 543(b)?

3. For what purposes and under what conditions may the various Partnership Debtors use the rents generated by their properties?

### IV. *Legal Determination*

Because the merits of the various motions depend upon a resolution of Florida rent assignment law, the Court will determine the respective rights of the parties in the rents prior to addressing the specific motions.

#### A. The Rights of the Parties in the Rents Under Applicable Florida Law

The Partnership Debtors contend that the assignment of rents provisions found in their respective mortgage documents merely granted Florida Federal a security interest in the rents generated by each property. RTC contends that the assignment language, coupled with the provisions of Fla. Stat. § 697.07, vest RTC with absolute ownership rights in the rents upon each Partnership Debtor's default in payment and the lender's compliance with the applicable notice requirements.

The relevant portions of the assignment provisions provide:

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby directs each tenant of the Property to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof which the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by a court-appointed receiver. Lender shall immediately be entitled to possession of all rents and revenues of the Property as specified in this paragraph 26 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of

the breach by Borrower shall contain a statement that Lender exercises its rights to such rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the Property shall make such rents payable to and pay such rents to Lender or Lender's agents on Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

\* \* \* \* \* \*

This assignment of rents of the Property shall terminate at such time as this instrument ceases to secure indebtedness held by the Lender.[3]

Fla.Stat. § 697.07 provides:

A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee. Upon application by the mortgagee, a court of competent Jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's right to the rents, any payments therefrom to be made solely to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property. Any undisbursed portion of said rents shall be disbursed in accordance with the court's final judgment or decree.

1. *This Court's Previous Decisions Under Fla Stat. § 697.07*

When this Court first addressed the appropriate interpretation of Fla.Stat. § 697.-07, it did so without any guidance from the Florida state courts. *See, In re Cardinal Industries, Inc.,* 118 B.R. 971 (Bankr. S.D.Ohio 1990), (*"Thymewood I"*). *Thymewood I* held that Fla.Stat. § 697.07 merely changed the procedure for a mort-

gagee to enforce a security interest in rents. 118 B.R. at 979. Seven of those cases in which the lender was Amerifirst Bank N.A. ("Amerifirst") appealed that decision and the District Judge disagreed with this Court's interpretation of Fla.Stat. § 697.07. *See, In re Thymewood Apartments, Ltd.,* 123 B.R. 969 (S.D.Ohio 1991), (*"Thymewood II"*).

In *Thymewood II* the District Judge determined that Fla.Stat. § 697.07 effected a change in Florida's substantive law regarding rent assignments. *Thymewood II* at 974. Under the District Judge's interpretation, Fla.Stat. § 697.07 made it possible for the parties to agree to an absolute transfer of ownership rights in rents upon the borrower's default. Prior Florida law did not permit such transfers of ownership in rents without a change in ownership of the underlying property. Therefore, according to the District Judge, the transfer permitted by Fla.Stat. § 697.07 was a change from previous case law which treated rent assignments as merely a grant of a security interest in rents. 123 B.R. at 979.

On remand, this Court followed the District Judge's interpretation and the law-of-the-case doctrine in considering the retroactivity arguments made by RTC, which was by then the Conservator for Amerifirst. Case law in Florida regarding the retroactive application of statutes established that Fla.Stat. § 697.07 could not be applied retroactively if it effectuated a substantive change in the law. *See, In re Thymewood Apartments, Ltd.,* 129 B.R. 505 (*"Thymewood III"*). This Court further determined, as a matter of fact, that the documents between the debtors in *Thymewood III* and Amerifirst were ambiguous and, taken as a whole, did not establish that the parties intended for ownership rights to be transferred to the mortgagee upon the mortgagor's default. Rather, when the assignment agreements were considered as part of the entire mortgage documents, the reasonable interpretation was that the assignments created only a security interest in rents. Therefore, even when the Dis-

---

**3.** All 13 Partnership Debtors had identical agreements with Cardinal Industries Mortgage Company. Those agreements were subsequently assigned, with the loans, to Florida Federal.

trict Judge's finding about the substantive effect of Fla.Stat. § 697.07 was followed and even if this Court's retroactivity analysis was in error, the factual conclusion was that the parties in those cases did not intend to create an absolute transfer of each debtor's interests in its rents.

Since this Court's decision in *Thymewood I* and the District Judge's decision in *Thymewood II,* several Florida courts have addressed the appropriate interpretation of Fla.Stat. § 697.07. Although this Bankruptcy Judge generally prefers to follow the decision of a local district judge where applicable, it may not be bound by the decisions of a district judge in a multi-judge district except where the law-of-the-case doctrine applies.[4] Law of the case does not apply to the rents issues raised in these thirteen cases because these Partnership Debtors now before this Court are proceeding in different cases than the debtors in *Thymewood II.* Because of the intervening case law developments in the Florida state courts, for reasons of judicial economy, this Court will adopt the consensus now emerging in Florida law about the appropriate construction of Fla.Stat. § 697.07. That consensus basically agrees with this Court's interpretation in *Thymewood I* and further means that a "retroactivity" analysis is not required.

2. *Recent Interpretations Given Fla. Stat. § 697.07 by Florida State Courts*

Prior to the enactment of Fla.Stat. § 697.07, Florida common law treated rent assignments as security interests only. *See, Carolina Portland Cement Co. v. Baumgartner,* 99 Fla. 987, 128 So. 241 (1930) and *White v. Anthony Investment Co.,* 119 Fla. 108, 160 So. 881 (1935). Indeed, one line of federal cases recognizes that construing Fla.Stat. § 697.07 to allow an absolute transfer of ownership rights effects a substantive change in Florida common law. *See, Thymewood II.* Within

the last three months, however, three Florida state courts have rejected this construction of Fla.Stat. § 697.07.

Florida's Fourth District Court of Appeals held that Fla.Stat. § 697.07 merely changed procedural law and, thus, could be applied retroactively. *Nassau Square Associates v. Insurance Commissioner of California,* 579 So.2d 259 (1991). The *Nassau* court examined the provision's legislative history and the federal case law interpreting Fla.Stat. § 697.07. The court consistently referred to the provisions as an "enforcement mechanism" only and not a change in Florida's assignment of rent law. 579 So.2d at 260. Stated differently, Fla. Stat. § 697.07 "does not create any new rights regarding the ability to assign rents." *Nassau,* 579 So.2d at 260 quoting *In re Aloma Square, Inc.,* 85 B.R. 623 (Bankr.M.D.Fla.1988).

The *Nassau* court also relied upon this Court's reasoning in its initial decision in *Thymewood I.* 118 B.R. at 971. If Fla. Stat. § 697.07 establishes "absolute ownership," then the mortgagee would be entitled to collect the rents even after satisfaction of the underlying obligation. The *Nassau* court characterized this conclusion as misguided. The term "absolute" in Fla. Stat. § 697.07 refers to the point when the mortgagee has the right to collect the rents and, not, the type of rights transferred. 579 So.2d at 260.

Although not deciding the issue directly, the Florida Supreme Court strongly indicated that Fla.Stat. § 697.07 would be interpreted merely as a remedial statute. *Haven Federal Savings and Loan Association v. Kirian,* 579 So.2d 730 (1991). The *Haven* court had before it the constitutionality of a related statute, Fla.Stat. § 702.-01, which mandated severance of counterclaims in foreclosure actions. The *Haven* court held that Fla.Stat. § 702.01 was procedural only and, to the extent it conflicted with a similar Florida Supreme Court Rule, it was unconstitutional.[5] In reaching this

---

4. For an excellent discussion of the policy considerations and reasoning behind this conclusion, *see, First American Bank v. Gaylor (In re Gaylor),* 123 B.R. 236 (Bankr.E.D.Mich.1991).

5. In Florida, the state supreme court has the exclusive authority to regulate practice and procedure. *See, Markert v. Johnston,* 367 So.2d 1003 (Fla.1978).

conclusion, the *Haven* court stated: "the amendments [to Fla.Stat. § 702.01] were part of a comprehensive revision of laws addressing difficulties lenders encountered in enforcing assignment of rents provisions in mortgage contracts." 579 So.2d at 733. In a footnote the *Haven* court included Fla.Stat. § 697.07 with these amendments as a method "to create a simple, equitable and inexpensive method by which a mortgage lender could enforce an assignment of rents contract." 579 So.2d at 733 n. 1.

Significantly, a subsequent Florida appellate court decision analyzes the *Haven* decision in a matter similar to that used by this Court. *Oakbrooke Associates v. Insurance Commission of California*, 581 So.2d 943, 945 (1991). As with the *Nassau* and *Haven* courts, the *Oakbrooke* court viewed Fla.Stat. § 697.07 as an enforcement mechanism: a procedural change only. The *Oakbrooke* court relied upon *Nassau* and *Haven* along with several federal cases for its conclusion that Fla.Stat. § 697.07 does not create a right to an absolute transfer of ownership rights in rents. Rather, the statute merely changes the procedure by which a mortgagee enforces its security interest in the rents. *See, also, In re One Fourth Street North, Ltd.*, 103 B.R. 320 (Bankr.M.D.Fla.1989); *In re Mears*, 88 B.R. 419 (Bankr.S.D.Fla.1988); *In re Aloma Square, Inc.*, 85 B.R. 623 (Bankr. M.D.Fla.1988), *aff'd* 116 B.R. 827 (M.D.Fla. 1990).

Both Florida appellate court decisions recognize the other line of federal cases which hold that Fla.Stat. § 697.07 allows for the absolute transfer of ownership rights in rents. *See, Thymewood II*, 123 B.R. at 969 and *In re Camelot Associates, Ltd. Partnership*, 102 B.R. 161 (Bankr. D.Minn.1989). However, the Florida state courts, interpreting Florida statutory language, reject those analyses.

■ In its memorandum, RTC cited these recent Florida appellate court decisions as support for its position that Fla. Stat. § 697.07 applies retroactively. However, these Florida decisions support only part of RTC's argument. RTC overlooks the crucial distinction that retroactive appli-

cation is only permissible when Fla.Stat. § 697.07 is interpreted as merely remedial or procedural. Florida law clearly provides that retroactivity depends upon the nature of the statute's change. A statute cannot be applied retroactively if it effects a substantive change in the law. *Manning v. Travelers Insurance Co.*, 250 So.2d 872, 874 (Fla.1971). Rather, retroactive application is permissible only if the statute merely changes the procedure by which a party may enforce established rights. *Pinellas County v. Banks*, 154 Fla. 582, 19 So.2d 1, 3 (1944).

The courts which have permitted retroactive application of Fla.Stat. § 697.07 have interpreted that provision as changing only the procedure by which a mortgagee enforces its security interest in rents. This is true of the Florida appellate court decisions relied upon by RTC. Accordingly, while RTC is correct that Fla.Stat. § 697.07 may be applied retroactively, such application only entitles RTC to earlier possession of the rents following notice of default. Under this interpretation of Fla.Stat. § 697.07, ownership rights were not transferred to RTC upon default.

Accordingly, this Court will follow the recent Florida state court decisions which hold that Fla.Stat. § 697.07 merely provides a more efficient procedural mechanism for mortgagees to enforce a security interest in rents. Fla.Stat. § 697.07 does not create or authorize a transfer of absolute ownership rights in rents. Therefore, while RTC holds a security interest in the rents, each Partnership Debtor continues to own those rents as well as the property producing those rents.

### B. Turnover

■ Under 11 U.S.C. § 543(b), a custodian of a debtor's property is obligated to turn over that property when the custodian becomes aware of the bankruptcy proceeding. If, upon request, the Court determines that the interests of creditors would be better served with the custodian remaining in possession of the property, the Court may excuse compliance with the turnover provisions. 11 U.S.C. § 543(d). Turnover

is the general rule, however, and excuse from compliance is the exception. Therefore, a party opposing turnover must demonstrate affirmatively how creditors will be better served if the receiver is retained. *In re Poplar Springs Apartments of Atlanta, Ltd.*, 103 B.R. 146, 150 (Bankr.S.D.Ohio 1989).

■ A request for excuse from turnover requires the Court to examine the following:

1. the debtor's likelihood of reorganization;
2. the probability that funds required for reorganization will be available; and
3. whether the evidence shows mismanagement of the property by the debtor.

*Poplar Springs*, 103 B.R. at 150.

Much of RTC's argument depended upon a finding that the Partnership Debtors did not own the rents. Without ownership rights in the rents, RTC contends that turnover of the underlying property would be meaningless and that all parties will be better served if control of each property remains with the state court appointed receiver and the status quo is maintained. RTC would, however, allow the Partnership Debtors the opportunity to reorganize. RTC contends that control of the property is not necessary for the Partnership Debtors to formulate plans of reorganization because the RTC will make all information readily available to the Partnership Debtors. RTC concludes that upon confirmation of a plan, each Partnership Debtor would again be entitled to collect the rents. These arguments represent a new twist to the "Florida rents issue," and a less "hard line" position by a lender.

This Court, however, has determined that the rents generated by each Partnership Debtor's property are property of that Partnership Debtor's estate. Therefore, the analysis under 11 U.S.C. § 543(b) for these thirteen cases is the same as the other Cardinal Partnership Debtor cases before this Court.

At the conclusion of the hearing, the Court found that no convincing evidence of mismanagement was presented for any of these Partnership Debtors. Further, the Court found that the Partnership Debtors had established the other elements necessary for turnover. The Court only reserved ruling on these matters at the hearing until the "Florida rents issue" was resolved. The Partnership Debtors have prevailed on that issue and, thus, turnover is appropriate.

This Court has consistently recognized that a debtor needs control of its property and the books and records of its business before it can propose a plan of reorganization. *In re Northgate Terrace Apartments, Ltd.*, 126 B.R. 520 (Bankr.S.D.Ohio 1991). Mere access to the information is not enough. Control is needed to see what, if any, expenses can be cut and if any new marketing strategies can be implemented to improve the property's performance. Additionally, the Court has recognized that in this large Cardinal enterprise bankruptcy, the plan process takes time. *In re Northgate Terrace Apartments, Ltd.*, 126 B.R. 762 (Bankr.S.D.Ohio 1991). For these reasons the Court finds that each Partnership Debtor is entitled to a turnover of its real and personal property.

This finding for turnover means that the funds Mr. Heretick, Mr. Bursik and other receivers hold on account of each Partnership Debtor are property of each respective estate and shall be turned over to the respective Partnership Debtor. Rents paid by the receivers to the respective lenders pre-petition will not be recovered as part of the turnover procedure. Funds paid to a lender post-petition without an order of the Court may be subject to avoidance, however. The status of pre-petition rents held by the receivers and not paid over to the respective lenders pre-petition is not before the Court at this time and is not being decided.

■ Any former tenant of a Partnership Debtor's property who is asserting a claim for a security deposit which was paid by the tenant prior to the appointment of a receiver has a claim against that Partnership Debtor. If Cardinal Industries Inc. has returned any of those security deposits

from its security bond, it may have a claim for reimbursement against the respective partnership. If Cardinal Apartment Management Group, Inc. believes it is entitled to payment of management fees for services performed prior to the receiver's appointment, it too may have a claim against the appropriate Partnership Debtor. Neither Mr. Heretick nor Mr. Bursik personally or in his capacity as a receiver of any Partnership Debtor is responsible for payment of those claims.

### C. Use of the Rents

 The rents of each Partnership Debtor are property of its estate. That property is subject to RTC's security interest and, therefore, is cash collateral which each Partnership Debtor seeks to use under 11 U.S.C. § 363(c)(2). The usage requested is to pay normal operating expenses of each property.

The Court finds that, consistent with its prior opinions, the rents may be used to pay ordinary, necessary and reasonable operating expenses of each property. The net rents may not be used, however, without the consent of RTC or an order from the Court upon the provision of adequate protection. Use of the gross rents to maintain the property was always contemplated by the parties and is a form of adequate protection to RTC. *See, In re Willowood East Apartments of Indianapolis II, Ltd.*, 114 B.R. 138 (Bankr.S.D.Ohio 1990).

### V. *Conclusion*

Based upon the foregoing, the Court finds that, under Fla.Stat. § 697.07 and the parties' agreements, each Partnership Debtor owns the rents generated by its property. RTC holds a security interest in those rents. Each Partnership Debtor is entitled to turnover of its real and personal property. Further, the rents are cash collateral which each Partnership Debtor is entitled to use to pay the normal, reasonable operating costs of its property. Additional usage is prohibited without RTC's consent or Court authority.

Additionally, the state court appointed receivers, Mr. Heretick and Mr. Bursik, are ordered to turn over the funds in their possession to each of the respective Partnership Debtors. The remaining state court appointed receivers, upon service of this order by partnership counsel, should also turn over the real and personal property of the respective Partnership Debtors.

IT IS SO ORDERED.

### JUDGMENT ENTRY

Judgment in the above captioned cases in the matters is hereby entered in favor of each Partnership Debtor listed above and against Resolution Trust Corporation, as Conservator for Florida Federal Savings, F.S.B., pursuant to an opinion and order dated August 15, 1991.

IT IS SO ORDERED.